# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

JUSTIN DEFILIPPO, DEREK
SCACHETTI, and TIMOTHY
BABBITT, on behalf of
themselves and all others
similarly situated,

         Plaintiffs,

    v.

WHIRLPOOL CORPORATION,

         Defendant.

1:18-cv-12523-NLH-AMD

**OPINION**

---

**APPEARANCES**:

BRUCE HELLER NAGEL
RANDEE M. MATLOFF
NAGEL RICE, LLP
103 EISENHOWER PARKWAY
SUITE 201
ROSELAND, NJ 07068

JOSEPH LOPICCOLO
POULOS LOPICCOLO PC
1305 SOUTH ROLLER ROAD
OCEAN, NJ 07757

    *On behalf of Plaintiffs*

LATHROP BARRERE NELSON, III
MONTGOMERY MCCRACKEN WALKER & RHOADS
LIBERTYVIEW, SUITE 600
457 HADDONFIELD ROAD
CHERRY HILL, NJ 08002

MEGAN B. TRESEDER
LOWENSTEIN SANDLER LLP
65 LIVINGSTON AVENUE
ROSELAND, NJ 07068

    *On behalf of Defendant*

**HILLMAN, District Judge**

This putative class action concerns claims by Plaintiffs and all similarly situated individuals arising out of allegedly defective refrigerators manufactured by Defendant Whirlpool Corporation. Pending before the Court is the motion of Defendant to dismiss Plaintiffs' complaint. For the reasons expressed below, Defendant's motion will be granted in part and denied in part.

**BACKGROUND**[1]

Plaintiffs, Justin DeFillippo, Derek Scachetti, and Timothy Babbitt, on behalf of themselves and others who are similarly situated, claim that Defendant, Whirlpool Corporation, has violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("NJCFA"), the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, et seq., New York's General Business Law §§ 349 and 350, and the Magnuson-Moss Act, 15 U.S.C. § 2301 et seq. Plaintiffs also assert claims against Whirlpool for common law fraud, breach of implied and express warranties, and unjust enrichment.

---

[1] Because Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court restates the facts alleged in Plaintiff's complaint, and accepts them as true for purposes of resolving Defendant's motion. Defendant also moved to dismiss certain claims for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) but has withdrawn that argument. (Docket No. 28.)

All these claims arise out of Whirlpool's sale of French Door
Bottom Mount refrigerators.  Plaintiffs summarize their claims
as follows:

- [U]nder various brand names such as Whirlpool,
KitchenAid and Maytag, [from 2012 to the present Whirlpool
sold French Door Bottom Mount ("FDBM") refrigerators]
containing defects that cause the refrigerators to provide
insufficient cooling in the refrigerator and/or freezer of
the unit.  According to internal technical service pointers
("TSP") released by Whirlpool to its service providers, the
defect occurs due to impeded air flow in the freezer
compartment which is caused by frost on the freezer
evaporator. Corrosion then forms on the brass freezer
defrost thermistor impacting the thermistor performance
allowing ice to accumulate on the evaporator (the
"Defect").

- Whirlpool knew about the Defect as early as March 2014
when it issued a TSP to its Dealers.  The TSP provided
details of the Defect.  This TSP was distributed to dealers
but not the public.

- Additional TSPs were released in June 2016 and then
again in September 2016, each one informing dealers, but
not the public, about the Defect, explaining the Defect

occurs due to "impeded air flow in the freezer compartment [which is caused by] frost on the freezer evaporator." "Corrosion [then forms] on the brass freezer defrost thermistor [impacting] the thermistor performance allowing ice to accumulate on the evaporator."

- According to the TSPs, there is a way to remedy the problem. The TSPs instruct the service provider to "[o]rder and install service kit Wl0902214 [which] includes a plastic thermistor, foil and wire tie."

- Whirlpool knew, or was reckless in not knowing, at or before the time it sold the first unit, that the Whirlpool Refrigerators contained the Defect. Whirlpool had sole and exclusive possession of this knowledge.

- Notwithstanding this knowledge, Whirlpool uniformly concealed this material information in its marketing, advertising, and sale of the Refrigerators, which Whirlpool knew to be defective, both at the time of sale and on an ongoing basis.

- At all times, Whirlpool uniformly concealed the Defect from Plaintiffs and all consumers of Whirlpool refrigerators and failed to remove Plaintiffs' refrigerators from the marketplace or take adequate remedial action. Instead, Whirlpool sold and serviced

4

Plaintiffs' refrigerators even though it knew, or was reckless in not knowing, that its refrigerators were defective and would ultimately provide insufficient cooling in the refrigerator and/or freezer of the units.

- As a consequence of Whirlpool's false and misleading statements and active and ongoing concealment of the Defect, Plaintiffs and the Class Members purchased and currently own defective Refrigerators and have incurred damages.

- Moreover, in addition to affirmatively misleading the Class Members, Whirlpool routinely declined to provide Class Members warranty repairs or other remedies for the Defect.

(Plaintiffs' Second Amended Compl., Docket No. 17 at 1-2, citations to exhibits omitted).

Plaintiffs' complaint details each of the three Plaintiff's alleged experience with his FDBM refrigerator. DeFillippo, a citizen of New York, purchased a FDBM refrigerator in September 2015 for $3,000 and began experiencing the alleged defect within one week. DeFillippo contacted Whirlpool right away, and a Whirlpool representative instructed him to unplug his refrigerator and plug it back in. That fixed the problem until the improper cooling occurred again. DeFillippo contacted

Whirlpool again, and because the defect does not cause a "trouble shooting code" to appear, the Whirlpool representative instructed him to unplug the refrigerator and plug it back in. That temporary fix failed, and DeFillippo's FDBM refrigerator has experienced the defect numerous times over the course of 26 months. DeFillippo now has to use a spare refrigerator. (Docket No. 17 at 4-5.)

Scachetti, a citizen of New Jersey, purchased a home in August 2017 that included a FDBM refrigerator manufactured in 2012. On June 1, 2018, Scachetti's FDBM refrigerator stopped cooling properly, and he immediately contacted Whirlpool, which sent a repair technician on June 4, 2018. The Whirlpool technician told Scachetti that based on the description of the problem that he knew before even looking at the refrigerator what the problem was and that Whirlpool knows about this defect. The technician confirmed the EVAP was not working properly and installed a new one. Whirlpool charged Scachetti a $96.00 service call fee, but despite Scachetti's demands, Whirlpool has refused to reimburse him the $96.00 service call fee because the refrigerator was outside its warranty period. (Docket No. 17 at 5-6.)

Babbitt, a citizen of New Jersey, purchased a FDBM refrigerator on January 21, 2013 for $2,342.00, along with a 5-

year extended warranty for $152.96 from Warrantech.  Within 10 months the FDBM refrigerator did not cool properly, and Babbitt contacted Whirlpool immediately.  Babbitt was instructed to unplug the refrigerator for a few hours and then replug it, but because that would result in food spoilage, Babbitt insisted that Whirlpool send a repair person.  On December 24, 2013, a repair person from American Home Appliance Service noted that the compressor was noisy and that Babbitt had attempted to resolve the issue by defrosting the ice in the freezer.

The problem occurred again a year later.  By then, the Whirlpool warranty had expired, and a repair person was sent under Babbitt's extended warranty.  On January 7, 2015, a repair person changed the compressor, but in a few weeks, the refrigerator stopped cooling properly.  On January 28, 2015, another repair person again replaced the compressor and replaced the evaporator coil.  In mid-October 2018, Babbitt's FDBM refrigerator stopped cooling sufficiently, and Whirlpool has refused to repair the defect.  Babbitt had to purchase another refrigerator to store his food.  (Docket No. 17 at 6-8.)

Whirlpool has moved to dismiss all the claims of each of the Plaintiffs on various bases depending on the particular

claim and the plaintiff who asserts it.[2]  Plaintiffs have
opposed Whirlpool's motion.

## DISCUSSION

### A.    Subject Matter Jurisdiction

This Court has original subject matter jurisdiction under
the Class Action Fairness Act, 28 U.S.C. §§ l332(d) and (6)
because (i) the number of Class Members is 100 or more; (ii) the
Class Members' damages, the aggregate amount in controversy
exclusive of interest and costs, exceeds $5,000,000; and (iii)
minimal diversity exists because at least one of the Class
Plaintiffs[3] and one Defendant[4] are citizens of different states.
This Court also has original subject matter jurisdiction over the
Class Plaintiffs' federal statutory claim under the Magnuson-Moss
Warranty Act, 15 U.S.C. § 2301 et seq., and supplemental
jurisdiction over the remaining claims under 28 U.S.C. § 1367.

### B.    Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for

---

[2] To its reply brief, Whirlpool attaches a detailed chart to
indicate which of its arguments correspond to which claims and
which plaintiff.  (Docket No. 27-5.)  It appears that the only
claim Whirlpool has not moved to dismiss is DeFillippo's breach
of implied warranty claim.  (Id.)

[3] As noted above, DeFillippo is a citizen of New York, and
Scachetti and Babbitt are citizens of New Jersey.

[4] Whirlpool is incorporated in Delaware and has its principal
place of business in Michigan.

failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and

then determine whether they plausibly give rise to an
entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations
in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556
U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416
U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d
203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in
the coffin for the 'no set of facts' standard that applied to
federal complaints before Twombly."). "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough
facts to state a claim to relief that is plausible on its
face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at
570).

A court in reviewing a Rule 12(b)(6) motion must only
consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.
S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,
181 F.3d 410, 426 (3d Cir. 1999). A court may consider,

however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

## C. Analysis

### 1. Plaintiff's consumer fraud claims

Plaintiffs have asserted claims under the New Jersey Consumer Fraud Act and the New York General Business Law §§ 349 and 350, all of which concern deceptive business practices.[5]

---

[5] New Jersey is the "forum state" for the instant litigation, and the Court "must apply the law of the forum state, including its choice of law rules." Harper v. LG Electronics USA, Inc., 595 F. Supp. 2d 486, 489 (D.N.J. 2009) (citations omitted). "'Each choice-of-law case presents its own unique combination of facts—the parties' residence, the place and type of occurrence and the specific set of governmental interest—that influence the resolution of the choice-of-law issue presented.'" Harper v. LG Electronics USA, Inc., 595 F. Supp. 2d 486, 490 (D.N.J. 2009) (quoting Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007)). In a multistate class action, a choice of law analysis must be conducted before the class is certified to determine which state's law should apply to the class. Argabright v. Rheem Manufacturing Company, 201 F. Supp. 3d 578, 591 (D.N.J. 2016) (citing In re LifeUSA Holding Inc., 242 F.3d 136, 147 n.11 (3d Cir. 2001)). Here, Plaintiffs propose one nationwide class or two subclasses, with one designated for New Jersey citizens and the other for New York citizens. (Docket No. 17 at 24.) Until the scope of the classes is resolved, the Court will assess Plaintiffs' allegations under both New Jersey and New York law

11

"The capacity to mislead is the prime ingredient of all types of consumer fraud." <u>Argabright v. Rheem Manufacturing Company</u>, 201 F. Supp. 3d 578, 605-06 (D.N.J. 2016) (quotations and citations omitted) (discussing the NYGBL § 349 and NJCFA). "False promises, misrepresentations, and concealment or omission of material facts all constitute deceptive practices under these statutes." <u>Id.</u> (citations omitted).

"A successful GBL § 349 claim requires that a plaintiff prove, by a preponderance of the evidence, that (1) the defendant has engaged in an act or practice that is deceptive or misleading in a material way; (2) the plaintiff has been injured by reason thereof; and (3) the deceptive act or practice is consumer oriented." <u>Koch v. Greenberg</u>, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) (quoting <u>Gaidon v. Guardian Life Ins. Co. of Am.</u>, 94 N.Y.2d 330, 343-44, 704 N.Y.S.2d 177, 725 N.E.2d 598 (Ct. App. 1999)) (quotations and citations omitted). "In contrast to private contract disputes, unique to the parties, consumer-oriented conduct within the meaning of the statute requires acts or practices that have a broader impact on consumers at large." <u>Id.</u> (citation omitted). "Consumer-oriented conduct does not require a repetition or pattern of

---

as appropriate. <u>See</u> <u>id.</u> (explaining that in a putative nationwide class action concerning the NJCFA and NYGBL, among other laws, the choice of law analysis is better left to a future stage of the case).

deceptive behavior," and as long as conduct was aimed at the public at large, it is immaterial that the defendant may not have "committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers." Id. (citation omitted). Where the "acts complained of potentially affect similarly situated consumers, the consumer-oriented prong will be met." Id. (quotations and citations omitted).

GBL § 350 prohibits false advertising and has the same elements as § 349, except for the requirement that the Defendant's advertisement "(1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." Koch v. Greenberg, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) (citation omitted).

The NJCFA was passed to address "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." Chaudhri v. Lumileds LLC, 2018 WL 6322623, at *6 (D.N.J. 2018) (quoting Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271 (1978)). As "remedial legislation," the NJCFA "should be construed liberally." Id. (quoting Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 377 n.1 (2007)). To establish a prima facie case under the NJCFA, "a plaintiff must allege (1)

unlawful conduct by the defendant, (2) an ascertainable loss by plaintiff; and (3) a causal connection between the defendant's unlawful practice and the plaintiff's ascertainable loss." Angelo v. Fidelity & Guaranty Life Insurance Company, 2019 WL 330521, at *5 (D.N.J. 2019) (quoting MZL Capital Holdings, Inc. v. TD Bank, N.A., 734 F. App'x 101, 104 (3d Cir. 2018) (citing Zaman v. Felton, 98 A.3d 503, 516 (N.J. 2014)).

Unlawful conduct falls into three general categories: affirmative acts, knowing omissions, and violation of regulations. Chaudhri, 2018 WL 6322623 at *6 (citing N.J.S.A. 56:8-2, 56:8-4). An affirmative misrepresentation under the NJCFA is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Id. (citation omitted). "Unlike common law fraud, the NJCFA does not require proof of reliance." Id. (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 606 (3d Cir. 2012)). Additionally, "[w]hen the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

A plaintiff asserting a claim based on an omission must demonstrate that the defendant "'(1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon

14

the concealment.'" Galo Coba, v. Ford Motor Company, 932 F.3d

114, 124 (3d Cir. 2019) (quoting Judge v. Blackfin Yacht Corp.,

815 A.2d 537, 541 (N.J. Super. Ct. App. Div. 2003)) (citing

N.J.S.A. 56:8-2). "Where a plaintiff's theory is based on a

knowing omission, the plaintiff must show that the defendant

acted with knowledge, and intent is an essential element of the

fraud." Cameron v. South Jersey Pubs, Inc., --- A.3d ---, 2019

WL 3022352, at *10 (N.J. Super. Ct. Appl Div. July 11, 2019)

(citations omitted).

Whirlpool argues that Plaintiffs have not asserted any

facts to support their claims that Whirlpool knew of the alleged

defect before it sold the refrigerators to Plaintiffs or that it

intentionally failed to disclose the alleged defect to the

public. Whirlpool also argues that Plaintiffs' reliance on

certain TSPs fails because they were issued after Scachetti and

Babbitt bought their FDBM refrigerators, and the other TSP that

pre-dates all three Plaintiffs' purchases does not reference

Plaintiffs' FDBM refrigerator model numbers. Whirlpool contends

that they cannot be used to support a claim as to what Whirlpool

knew before it sold the refrigerators to Plaintiffs. Whirlpool

further argues that Plaintiffs have not alleged any facts

regarding their reliance on Whirlpool's representations

regarding the refrigerators, or that Whirlpool had a duty to

disclose the alleged defect to customers. Whirlpool also argues

that because Scachetti's alleged defect manifested outside of the warranty period, his NJCFA claim fails.

Whirlpool's arguments are not persuasive at the motion to dismiss stage. Plaintiffs allege an "affirmative act" claim as follows: (1) Whirlpool knew of the alleged defect since at least March 2014 but it still advertised its FDBM refrigerators as "top-of-the-line" without any such defect; (2) Plaintiffs purchased the allegedly defective refrigerators without being aware of the problem and have suffered financial losses because of the defect; and (3) Whirlpool's affirmative misrepresentation about the defect caused Plaintiffs' losses.

Plaintiffs also allege a "knowing omission" claim as follows: (1) Whirlpool knew of the alleged defect since at least March 2014 but knowingly and intentionally concealed it from the public; (2) the alleged defect was material to Plaintiffs' decision to purchase Whirlpool's FDBM refrigerator;[6] and (3)

---

[6] Whirlpool argues that Scachetti cannot assert any fraud-based claims because he did not purchase his FDBM refrigerator himself, but instead acquired it when it was already in the home he purchased, and he therefore cannot, and does not, plead that he relied upon any statements by Whirlpool in buying his refrigerator. There are two flaws with this argument. First, only Scachetti's "knowing omission" claim requires intent and reliance, and not his "affirmative act" claim. Second, simply because Scachetti did not purchase the refrigerator brand new does not mean that when he bought it second-hand as part of the purchase of his home the value of the "Gold Series" FDBM refrigerator was not a consideration in the transaction. Whirlpool's argument as to Scachetti's fraud claims that require reliance are best resolved after discovery.

Whirlpool intended to conceal the alleged defect from its customers so that they would purchase Whirlpool's refrigerators.

Plaintiffs' allegations, when accepted as true, readily satisfy the required pleading standards for their and NJCFA and NYGBL §§ 349 and 350 claims.[7] Plaintiffs have related their own experiences with the alleged defect in their FDBM refrigerators, and they have provided numerous examples of other customers who have suffered the same problems. Plaintiffs have obtained some direct proof issued by Whirlpool to dealers and service providers regarding the alleged defect. Whirlpool challenges the three TSPs that Plaintiffs cite to in their complaint to support their claims that Whirlpool had knowledge of the alleged defect – beyond oral representations made by dealers and service providers to Plaintiffs and others - but Plaintiffs cannot be faulted for not having access to more of Whirlpool's internal documents, especially considering that the relevant documents may, if Plaintiffs' claims are true, reveal Whirlpool's fraud. See Rabinowitz v. American Water Resources, LLC, 2019 WL 1324492, at *7 (D.N.J. 2019) (denying a motion to dismiss a

_____

[7] Claims under NYGBL §§ 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b), Greene v. Gerber Products Co., 262 F. Supp. 3d 38, 67 (E.D.N.Y. 2017), but the heightened pleading standard set forth in Rule 9(b) applies to NJCFA claims, In Re Insulin Pricing Litigation, 2019 WL 643709, at *14 (D.N.J. 2019) (citing Dewey v. Volkswagen, 558 F. Supp. 2d 505, 524 (D.N.J. 2008)). Plaintiffs' allegations meet both the Rule 8(a) and Rule 9(b) standards.

plaintiff's putative consumer fraud class action and questioning what more the plaintiff could allege in that stage of the case other than citing to a "smoking gun" admission on the part of the defendant); Burroughs v. PHH Mortgage Corporation, 2016 WL 1389934 at *4 (D.N.J. 2016) ("The party who has defrauded another cannot use the success of that fraud as a sword to defeat the victim's claims against it."); Rowen Petroleum Properties, LLC v. Hollywood Tanning Systems, Inc., 2009 WL 1085737 at *6 (D.N.J. 2009) ("[T]he failure of plaintiff to be more specific with regard to the defendants' individual conduct is not fatal to the claims at this motion to dismiss stage, since it is only the defendants themselves who possess the knowledge of the alleged bait and switch."); Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) ("Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs.  Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control."); Shapiro v. UJB Financial Corp., 964 F.2d 272, 284 (3d Cir. 1992) (explaining that Rule 9(b) has stringent pleading requirements, but "the courts should be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud'" (citation omitted)).

The TSPs provided by Plaintiffs show that Whirlpool had
knowledge of cooling issues with certain FDBM refrigerator
models, and this provides a factual predicate to Plaintiffs'
consumer fraud claims regarding Whirlpool's knowledge of the
defect as alleged by Plaintiffs.  The TSPs, as well as
Plaintiffs' other averments, are more than sufficient to survive
Whirlpools' motion to dismiss Plaintiffs' NJCFA and GBL claims.[8]

With regard to Whirlpool's argument that because
Scachetti's alleged defect manifested outside of the warranty
period, his NJCFA claim fails, the Court does not agree.  To

---

[8] Just as Plaintiffs' NJCFA and NY GBL claims may proceed so too
will their TCCWNA and common law fraud claims.  See Dugan v. TGI
Fridays, Inc., 171 A.3d 620, 647 (N.J. 2017) (citing N.J.S.A.
56:12-15) (explaining that in order to be found liable under the
TCCWNA, a defendant must have violated a "clearly established
legal right," such as the NJCFA); Bosland v. Warnock Dodge,
Inc., 933 A.2d 942, 949 (N.J. Super. Ct. App. Div. 2007) ("[A]
consumer contract that violates a clearly established legal
right under the CFA regulations is also a violation of the
TCCWNA."); New Jersey Economic Development Authority v. Pavonia
Restaurant, Inc., 725 A.2d 1133, 1139 (N.J. Super. Ct. App. Div.
1998) ("Legal fraud consists of five elements: (1) a material
representation by the defendant of a presently existing or past
fact; (2) knowledge or belief by the defendant of that
representation's falsity; (3) an intent that the plaintiff rely
thereon; (4) reasonable reliance by the plaintiff on the
representation; and (5) resulting damage to the plaintiff. . . .
. Deliberate suppression of a material fact that should be
disclosed is equivalent to a material misrepresentation (i.e.,
an affirmative false statement).  In other words, silence, in
the face of a duty to disclose, may be a fraudulent
concealment." (citations, quotations and alterations omitted));
Kuzian v. Electrolux Home Products, Inc., 937 F. Supp. 2d 599,
614 (D.N.J. 2013) (finding that for the same reasons as the
plaintiffs' CFA claims, the plaintiffs' common law fraud claims
could proceed).

support its argument, Whirlpool cites to <u>Mickens v. Ford Motor</u>
<u>Co.</u>, 900 F. Supp. 2d 427, 443 (D.N.J. 2012), which stated that
the failure of a manufacturer or seller to advise a purchaser
that a part that may break down or require repair after the
expiration of the warranty period cannot constitute a violation
of the CFA. While that is a true statement of the law the
<u>Mickens</u> court also stated, "That principle, however, is not
without limits. The plaintiff may nevertheless state a claim by
alleging that [1] the purported defect manifested itself within
the warranty period and [2] that the manufacturer knew the
product would fail." <u>Id.</u> Whirlpool argues that Scachetti
cannot establish both requirements, and therefore his NJCFA
claim fails as a matter of law.

In <u>Mickens</u>, the defect manifested in the warranty period,
and the Court therefore did not need to consider the issue
further. In its analysis, <u>Mickens</u> cited to <u>Maniscalco v.</u>
<u>Brother Int'l Corp. (USA)</u>, 627 F. Supp. 2d 494, 501 (D.N.J.
2009), which in turn cited to <u>Perkins v. DaimlerChrysler Corp.</u>,
890 A.2d 997, 1004 (N.J. Super. Ct. App. Div. 2006). The
<u>Maniscalo</u> court explained that New Jersey allows a NJCFA defense
in circumstances where a warranty exists and the product
performs beyond that warranty period. As explained by the
<u>Maniscalo</u> court, <u>Perkins</u> concerned a purchaser of a Jeep who
alleged a violation of the CFA "because defendant did not reveal

that the vehicle was manufactured with a tubular exhaust manifold allegedly susceptible to cracking and premature failing, and unlikely to last for 250,000 miles, which, plaintiff claims without support, is the industry standard for such a part. Maniscalo, 627 F. Supp. 2d at 501. The Perkins court found the "failure of a manufacturer or seller to advise a purchaser that a part may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the CFA," and "to interpret the CFA, beyond its present scope, to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of contract which defined the length and scope of the warranty period . . . [which] would also have a tendency to extend those warranty programs for the entire life of the vehicle . . . ." Perkins, 890 A.2d at 1004.

The court in Maniscalo found, "Simply put, Perkins stands for the proposition that merely alleging that the warranty is shorter than the industry standard useful life of the product does not state a claim under the CFA." Maniscalo, 627 F. Supp. 2d at 501. The court then distinguished the case before it from Perkins:

> In Perkins the allegedly substandard car part never actually failed, while in the present case Plaintiffs allege that their products did suffer the defect. Further,

in Perkins plaintiff did not allege that the defendant knew
that its specific product contained a defect that would
cause it to fail before that product's expected useful
life.  Instead, the plaintiff in Perkins alleged only that
the product contained an allegedly substandard part which
may, but did not, cause the product to fail before the
industry lifetime standard.  Although a manufacturer or
seller need not warrant that its product will survive for
the useful life of the product, the present case is
different because it deals with BIC's expectations of its
own product.  Indeed, Plaintiffs allege that BIC knew of
the ME41 [all-in-one printer] defect by 2001, knew that its
product should last 5 years or 50,000 pages, limited the
warranty coverage so that the MFC machines would last
longer than the warranty period but that the machine head
would not last as long as the product's expected useful
life, and unconscionably marketed the product to uninformed
consumers in order to maximize profits.  These allegations
taken as a whole are sufficient to constitute an unlawful
act under the CFA.

Id. at 501-02 (internal citations omitted).  The court further

found:

In New Jersey, broad CFA protection was envisioned by the
legislature and has been recognized by the Supreme Court of
New Jersey.  If the New Jersey Supreme Court were faced
with a situation where a manufacturer or seller of a
product knew that its product had a defect which would
cause it to fail before its expected useful life, and
intentionally concealed that information from a purchaser,
with the purpose of maximizing profit, I predict that the
New Jersey Supreme Court would not be willing to find, as a
matter of law, that the CFA was categorically inapplicable.
Therefore, this Court will not extend the holding in
Perkins to cover the very different factual scenario in the
present case.

Id.

This Court agrees with the reasoning of Maniscalo, which

presented claims similar to the ones in this case.  The Court

does not find that the law precludes NJCFA claims in all

22

situations when a defect manifests after the expiration of a warranty.  Accordingly, under the allegations lodged in this case, where Scachetti has paid for repairs due to the alleged defect which existed at the time it was sold to the original buyer, still existed when Scachetti took possession of the refrigerator, and which was allegedly known to Whirlpool, Scachetti's NJCFA claim is not barred simply because the defect manifested itself after the expiration of the one-year warranty period.

### 2.  Plaintiffs' warranty claims

Whirlpool's FDBM refrigerators came with a one-year warranty from date of purchase against defects "in material and workmanship under normal household use," and Whirlpool will "pay for Factory Specified Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased."  (Docket No. 17 at 29.)

Plaintiffs assert three types of warranty claims against Whirlpool.  First, Plaintiffs allege that Whirlpool breached the express warranty when it was notified of the defects within the warranty period and Whirlpool failed to cure the defects. Second, Plaintiffs allege that the express warranty is commercially unconscionable because Whirlpool knew that customers would not likely discover the reason their FDBM refrigerators were not cooling sufficiently until after the one-

year warranty period expired.  Third, Plaintiffs claim that
Whirlpool made numerous implied warranties regarding the
merchantable quality of the FDBM refrigerators – i.e., that they
would be able to keep food and drink sufficiently cool in the
refrigerator and frozen in the freezer – but Whirlpool breached
the implied warranty of fitness for its particular purpose.
Based on the same allegations, Plaintiffs have asserted a
Magnuson-Moss Warranty Act claim.

Related to these claims is Plaintiffs' claim for equitable
tolling of the statute of limitations.  Plaintiffs claim that
Whirlpool's active and knowing concealment of the alleged defect
since 2014 tolls any statute of limitations because Plaintiffs
were unaware of the true reasons for the malfunctioning
refrigerators until just before they filed their complaint.

Whirlpool attacks Plaintiffs' warranty claims individually.
Whirlpool argues:  Scachetti's defect did not manifest until
after the express warranty expired; Scachetti's unconscionable
warranty claim is conclusory and does not sufficiently allege
that the warranty is unfair; Scachetti's refrigerator worked for
6 years before it needed a repair so it was therefore fit for
its intended purpose; and Babbitt's express and implied
warranties are time-barred, and the equitable tolling claim is

insufficiently pleaded to save his claims.[9]

A close review of Plaintiffs' warranty claims demonstrates that their express and implied warranty claims are viable for each Plaintiff at this stage in the case, but not Plaintiffs' unconscionability claim.

### a. Unconscionability

Beginning with Plaintiff's claim that the express warranty is unconscionable, the case Argabright v. Rheem Manufacturing Company, 201 F. Supp. 3d 578, 595-98 (D.N.J. 2016) is directly on point. In that case, the plaintiffs alleged that defendant knew the copper evaporator coils in its HVAC units would prematurely corrode and leak refrigerant, causing the HVAC units to be unable to produce cold air. Among other warranty claims, the plaintiffs claimed that the warranty was substantively unconscionable because the defendant knew the HVACs were defective when they sold them and manipulated the terms of the

---

[9] Whirlpool also argues that all the Plaintiffs' warranty claims should be dismissed because Plaintiffs' claims are premised on a design defect and not on what the warranty covers - defects in materials or workmanship. The Court agrees to the extent that the complaint references alleged design defects in relation to the warranty claims, but notes that Plaintiffs claim that Whirlpool "failed to adequately design, manufacture, and/or test the Refrigerators to ensure that they were free from the Defect, and/or knew, had reason to know, or was reckless in not knowing of the Defect when it uniformly warranted, advertised, marketed, and sold the Refrigerators to Plaintiffs and the Class." (Docket No. 17. at 20.) Thus, Plaintiffs' warranty claims do not solely encompass their allegations about a design defect.

warranty to avoid repair costs.  Plaintiff pointed to the fact

that they submitted claims under their warranty, numerous

consumers has posted in a public online forum about the failure

of the defendant's evaporator coils, and the defendant later

switched to corrosion-resistant aluminum.

The court dismissed the plaintiffs' unconscionability

claim.  The <u>Argabright</u> court explained,

> It is well-settled that courts may refuse to enforce
> contracts that are unconscionable or violate public policy.
> In consumer goods transactions such as those involved in
> this case, unconscionability must be equated with the
> concepts of deception, fraud, false pretense,
> misrepresentation, concealment and the like, which are
> stamped unlawful under N.J.S.A. 56:8-2.  A "simple breach
> of warranty or breach of contract is not per se unfair or
> unconscionable."

> Unconscionability may be either substantive or procedural.
> New Jersey courts may find a contract term substantively
> unconscionable if it is excessively disproportionate and
> involves an exchange of obligations so one-sided as to
> shock the court's conscience.  Procedural unconscionability
> refers to unfairness in the formation of the contract, and
> may be shown by a variety of inadequacies, such as age,
> literacy, lack of sophistication, hidden or unduly complex
> contract terms, bargaining tactics, and the particular
> setting existing during the contract formation process.

<u>Argabright</u>, 201 F. Supp. 3d at 595 (quotations and citations

omitted).  Discussing other cases that had come to the same

result, the court explained:

> The plaintiffs in the above cases raised claims of
> substantive unconscionability, alleging that defendant knew
> of the defect at the time they issued the warranty; knew
> when the defect would manifest; and "manipulated" the
> warranty's time period so as to avoid liability.  Such
> conduct, the courts held, did not make a warranty

substantively unconscionable. As one court explained, this is because a manufacturer must predict rates of failure of particular parts in order to price warranties, and a rule that would make failure of a part actionable based on such "knowledge" would render meaningless the limitations built into a warranty's coverage. Although in the above cases, the product defects occurred after the expiration of the warranty period in the above cases, the reasoning applies with equal force here. Plaintiffs' allegation that Defendant knew of a latent defect at the time it issued its Warranty, even if true, does not render the warranty unconscionable. As a manufacturer, Defendant is within its right to create a limited remedy that minimizes its costs and obligations based on its prediction of the rate of failure of particular parts.

Argabright, 201 F. Supp. 3d at 597 (quotations, citations, and alterations omitted).[10] The court further noted, "The rule, admittedly, is severe, and grants little favor to consumers, but demonstrates the high standard that must be met for a contract to be ruled 'substantively unconscionable.'" Id. at 297 n.10 (citing Dalton v. Gen. Motors Corp., No. 05-727, 2005 WL 2654071, at *8 (D.N.J. Oct. 17, 2005) ("'[A] contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. . . . Instead, a term is

---

[10] In addition to contending that the warranty was substantively unconscionable, the plaintiffs also argued that the warranty was procedurally unconscionable. The court rejected that argument, finding that "[o]f course, there is a disparity in bargaining power in nearly all consumer contracts executed between a purchaser and a manufacturer, and Plaintiffs' conclusory assertion is by itself insufficient to render a contract unconscionable." Id. at 596. Plaintiffs here make a similar argument, and this Court rejects it for the same reason as the Court in Argabright.

substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.'").

Plaintiffs' unconscionability claim here is identical to the one in Argabright and the cases cited in Argabright. This Court adopts the reasoning of those cases, which compels the dismissal of Plaintiffs' claim that the one-year warranty provided by Whirlpool for the FDBM refrigerators "shocks the conscious." The Court has already determined that Plaintiffs have adequately pleaded fraud claims based on their allegations that Whirlpool knew of the defect and failed to disclose it to the public, and that Whirlpool lulled owners of the FDBM refrigerators with temporary fixes until the warranty period expired. Those fraud claims, and not a claim for an unconscionable warranty, is the proper path for prosecuting those allegations.

### b. Express warranty

For Plaintiffs' breach of express warranty claim, to state a claim for breach of express warranty under New Jersey law, Plaintiffs must allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description. Argabright, 201 F. Supp. 3d at 592 (citation

28

omitted).  "[G]enerally, latent defects discovered after the

term of an express warranty cannot serve a basis for a claim for

the breach of an express warranty."  <u>Kuzian v. Electrolux Home

Products, Inc.</u>, 937 F. Supp. 2d 599, 611 (D.N.J. 2013).[11]

Under the New Jersey Uniform Commercial Code, any action

for breach of contract for sale "must be commenced within four

years after the cause of action has accrued."  N.J.S.A. 12A:2-

725(1), and "[a] cause of action accrues when the breach occurs,

regardless of the aggrieved party's lack of knowledge of the

breach," and "[a] breach of warranty occurs when tender of

---

[11] In their brief, Plaintiffs raise the argument that the express
warranty fails for its essential purpose.  Under the UCC, a
court may set aside an exclusive repair or replace remedy if it
is shown that such remedy has failed of its essential purpose.
N.J.S.A. 12A:2-719(2) ("Where circumstances cause an exclusive
or limited remedy to fail of its essential purpose, remedy may
be had as provided in this Act.").  A repair or replace remedy
fails of its essential purpose where the manufacturer is unable
to repair the defect within a reasonable time.  <u>In re
Caterpillar, Inc., C13 and C15 Engine Products Liability
Litigation</u>, 2015 WL 4591236, at *23 (D.N.J. 2015).  Whether a
limited warranty has failed its essential purpose is a question
of fact for the jury.  <u>Id.</u> (citation omitted).  A "failure of
essential purpose" is not a breach of contract theory, but
rather a doctrine by which courts set aside a limited remedy and
permit alternative recovery.  <u>Id.</u> (citation omitted).  The
overall theme of Plaintiffs' claims is that Whirlpool's repair
or replace remedy fails to correct the defect, and such a claim
could be viable, but Plaintiffs do not specifically plead that
the express warranty failed in its essential purpose.  <u>Cf.
Argabright</u>, 201 F. Supp. 3d at 594 ("Had Defendant refused to
repair or replace the nonworking coils, or had Defendant's
replacement parts failed to function, saddling Plaintiffs with
non-working units still under warranty, Plaintiffs would have a
fair claim that the remedy contemplated under the Warranty
failed of its essential purpose.").

delivery is made," N.J.S.A. 12A:2-725(2).

An exception to this rule is when a warranty of "future performance" is involved. Under New Jersey law, a warranty "to repair any product defect that occurs during a warranty period" constitutes a warranty of "future performance," and a cause of action therefore does not accrue until the breach is or should have been discovered. Argabright, 201 F. Supp. 3d at 600 (citing N.J.S.A. 12A:2-725(2) ("A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.") (other citations omitted).

DeFillippo's and Babbitt's breach of the express warranty claims may proceed. DeFillippo alleges he experienced the defect within one week of taking possession of his refrigerator, and Babbitt alleges he experienced the defect within ten months of receiving his refrigerator. Both Plaintiffs allege that during the one-year warranty period, Whirlpool failed to "pay for Factory Specific Parts and repair labor to correct defects" that existed when they purchased the refrigerators. These claims adequately state a claim for breach of the express

warranty.[12]  See, e.g., Kuzian, 937 F. Supp. 2d at 612

("Plaintiffs are not contending that a known or unknown latent

defect manifested after the express warranty period, but rather

that Electrolux's express warranty warranted, for one year, its

affirmation and description of the ice makers' performance.

When the ice makers began to fail during that first year,

plaintiffs contend that Electrolux breached its warranty that

the ice makers would perform as promised.  These claims may

proceed."); id. at n.10 ("Electrolux argues that because

Kuzian's ice maker was repaired and then at some point past the

one-year mark stopped working again, that allegation

demonstrates that Electrolux honored its warranty by making his

ice maker operational.  The Court does not construe Kuzian's

claim so narrowly at this motion to dismiss stage.").

Scachetti's breach of express warranty fails, however,

because the one-year warranty for his 2012 FDBM refrigerator

expired in 2013, but Scachetti did not take possession of the

refrigerator until August 2017, and he did not experience the

alleged defect until June 2018.

With regard to Babbitt's breach of express warranty claim,

---

[12] As noted, DeFillippo is a citizen of New York.  The parties
have applied only New Jersey law to the assessment of all three
of Plaintiffs' warranty claims.  Defendants have not argued that
if New York law were applied to DeFillippo's warranty claims the
result would be different.

Whirlpool argues that even though the alleged defect manifested within the one-year warranty period, his claim is time barred under the four-year statute of limitations.  Whirlpool points out that Babbitt did not join this suit until December 2018, which is more than four years from when he discovered the alleged defect (approximately October 2013), or when the one-year warranty expired (February 26, 2014).

Babbitt argues that his refrigerator was still under warranty at the time he joined the action because of the extended warranty he purchased, and the four-year statute of limitations did not start to run until the expiration of that warranty.  Additionally, Babbitt argues that the statute of limitations should be equitably tolled due to Whirlpool's ineffective repairs which lulled him into the belief that the defect had been corrected as promised under the original one-year warranty and that it was not until mid-October 2018 that he realized Whirlpool was not going to live up to its promise.

The Court rejects Babbitt's first argument regarding the extended warranty because that warranty was issued by an entity other than Whirlpool, and therefore provides a separate and supplemental obligation not attributable to Whirlpool.  The Court, however, finds that Babbitt's claim for equitable tolling to be sufficiently pleaded to permit his express warranty claim to proceed.

Equitable tolling "applies where defendant's fraudulent conduct results in Plaintiff's lack of knowledge of a cause of action," and the essence of equitable tolling "is not whether [the p]laintiff was in possession of all the information necessary to prevail on [her] claims, but whether plaintiff had enough information to commence a lawsuit." Argabright, 258 F. Supp. 3d at, 485 (quotations and citations omitted). Under the doctrine, "the statute of limitations will be tolled if the plaintiff pleads, with particularity, the following three elements: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." Id.

As related above, Babbitt purchased a FDBM refrigerator on January 21, 2013, and within 10 months it stopped cooling properly. Babbitt contacted Whirlpool immediately and Whirlpool instructed Babbitt to unplug the refrigerator for a few hours and then replug it. The problem occurred again a year later, but by then, the Whirlpool warranty had expired. On January 7, 2015, a repair person changed the compressor, but in a few weeks, the refrigerator stopped cooling properly; on January 28, 2015, another repair person again replaced the compressor and replaced the evaporator coil. By mid-October 2018, the alleged defect that manifested during the one-year warranty period

33

happened again, and because Whirlpool has refused to repair the defect, Babbitt had to purchase another refrigerator to store his food. Babbitt joined this action less than two months later.

Under these circumstances, and at this stage in the case, the Court finds that Whirlpool's alleged lulling behavior and refusal to "pay for Factory Specific Parts and repair labor to correct defects" that existed when Babbitt purchased the refrigerator, as well as Babbitt's diligence in pursuing legal action after five years of unsuccessful repairs and the need to purchase a second refrigerator to keep his food and drinks at the proper temperature, warrant the equitable tolling of the statute of limitations. See e.g., Argabright, 258 F. Supp. 3d at 470 ("In an abundance of caution, the Court will decline to dismiss Fecht's claim for breach of the implied warranty as time-barred at this early stage of the proceedings. Defendant will, of course, be free to argue that the factual circumstances, as developed in the eventual course of these proceedings, do not support the application of equitable tolling, and the Court will duly consider the record at that time.") (discussing Statler v. Dell, Inc., 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011) ("[T]he court is in no position, at this stage of the proceedings, to make factual findings with respect to Dell's conduct. Discovery will uncover facts regarding

Dell's conduct, as well as those that may ultimately support the conclusion that Plaintiff possessed more than enough information to commence a timely lawsuit.  Such a conclusion cannot be reached, however, only upon consideration of the pleadings and other documents before the court on this motion.  Accordingly, the court will not rule, at this time, whether equitable principles can toll the running of the statute of limitations, or estop Defendant from asserting a statute of limitations defense.  The court therefore denies the motion to dismiss the warranty claims at this time.  Such claims may or may not be saved by equitable tolling; it is simply too early to tell."; BK Trucking Co. v. Paccar, Inc., 2016 WL 3566723, at *5 (D.N.J. 2016) ("The Complaint clearly alleges that, as a result of the alleged defect with the ATS, Plaintiffs were required to bring their vehicles to authorized repair facilities.  During these repair attempts, it is alleged, Defendants represented to Plaintiffs that each instance of repair or replacement would correct the defect, despite knowing that it would not, and could not, do so.  When exactly Plaintiffs should have learned that the alleged problems with the ATS were not just isolated incidents but, instead, a systemic defect, may well have been beyond the one-year mark for bringing suit.  Because the Complaint does not reveal when the limitations period began to run, the statute of limitations cannot justify dismissal under

35

Rule 12(b)(6).”); <u>In re FieldTurf Artificial Turf Marketing and Sales Practices Litigation</u>, 2018 WL 4188459, at *19 (D.N.J. 2018) (finding that the plaintiffs adequately pleaded the equitable tolling of the statute of limitations based on FieldTurf's fraudulent concealment and “deny-and-delay” scheme, and “at this juncture, the Court declines to bar Levittown from bringing an express warranty claim based on an alleged future performance warranty created by FieldTurf's oral misrepresentations, as Plaintiffs assert fraud claims challenging the underlying warranties and have asserted warranty claims in the alternative).

### c. Implied Warranty

Plaintiffs' claims for breach of an implied warranty of merchantability and fit for intended purpose results in the same determination – DeFillippo and Babbitts' claims may proceed, but Scachetti's fails. New Jersey law provides that merchantable goods must be fit for the ordinary purposes for which such goods are used. N.J.S.A. 12A:2-314. New Jersey law also provides, “Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose.” N.J.S.A. 12A:2-314.

These two warranties "protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." Kuzian, 937 F. Supp. 2d at 612 (quotations and citations omitted).

In order to establish a breach of either warranty, a plaintiff "must show that the equipment they purchased from defendant was defective." Id. "[E]stablishing a breach of the implied warranties of merchantability and fitness for a particular purpose requires a showing regarding the product's functionality, not the advertisements that allegedly induced a customer to purchase it." Id. at 612-13. "A cause of action for breach of implied warranty accrues when delivery of the product is made, regardless of the purchaser's lack of knowledge," unless equitable tolling applies. Argabright, 201 F. Supp. 3d at 600.

Plaintiffs claim that they endeavored to purchase a refrigerator that remained at the proper temperature to appropriately store food and drink, and the Whirlpool FDBM refrigerators they purchased failed in this essential purpose because of the alleged defect. This breach of the implied warranty claim is adequately pleaded. It is timely brought by DeFillippo, and at this stage, equitable tolling permits Babbitt's claim to proceed. For both DeFillippo and Babbitt, the alleged defect arose within the one-year implied warranty

period.  Scachetti's implied warranty claim must be dismissed because the alleged defect did not occur until well-outside the one-year warranty period.  <u>Stevenson v. Mazda Motor of America, Inc.</u>, 2015 WL 3487756, at *12 (D.N.J. 2015) ("[N]umerous cases in this District have found that a plaintiff cannot assert a claim for breach of the implied warranty of merchantability where a warranty period has expired at the time a defect was discovered.").[13]

### d.  Magnuson-Moss Act

The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., provides a private right of action in federal court for consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty."  15 U.S.C. § 2310(d)(1).  Claims under the MMWA depend upon the disposition of the underlying state law warranty claims.  <u>See Johansson v. Cent. Garden & Pet Co.</u>, 804 F. Supp .2d 257, 265 (D.N.J. 2011) ("A claim under the MMWA relies on the underlying state law claim.")

Because DeFillippo and Babbitt have pleaded viable claims

---

[13] Scachetti points out that even though his FDBM refrigerator suffered from the alleged defect in June 2018, a year after he purchased the refrigerator from the previous owner, and six years after it was manufactured, that does not mean the defect had not manifested previously.  Scachetti, however, does not allege any facts to support this mere supposition.

for Whirlpool's express and implied warranty claims, their MMWA claims may proceed as well. <u>Argabright</u>, 201 F. Supp. 3d at 600 (finding that because the plaintiffs stated a viable breach of implied warranty claim, their MMWA claim could proceed). Scachetti's MMWA claim must be dismissed.

### 4. Unjust Enrichment

Plaintiffs claim that Whirlpool has been unjustly enriched and received an economic benefit from the sale of the FDBM refrigerators to Plaintiffs. Whirlpool has moved to dismiss this claim advanced by Scachetti and Babbitt because they did not directly purchase their refrigerators from Whirlpool – Scachetti purchased his refrigerator from the previous homeowner, and Babbitt purchased his refrigerator from a third-party seller – and to in order to sustain an unjust enrichment claim, Plaintiffs must have conferred a direct benefit on Whirlpool, and not a third party.

Under New Jersey law, to state a claim for unjust enrichment, "a plaintiff must allege that (1) at plaintiffs' expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it," and that at the pleading stage, a plaintiff "need only allege facts sufficient to show: 1) Plaintiff conferred a benefit on Defendant; and 2) circumstances are such that to deny recovery would be unjust." <u>Dzielak v.</u>

Whirlpool Corp., 26 F. Supp. 3d 304, 330–31 (D.N.J. 2014) (citations omitted).

Plaintiffs argue that there is no consensus in the courts in New Jersey as to whether a direct relationship between the buyer and seller is required to sustain an unjust enrichment claim, and their unjust enrichment claim should proceed at this stage.

The Court's review of the caselaw shows that in the majority of cases concerning claims similar to the ones asserted here – fraud and breach of warranty claims against a product manufacturer – a plaintiff may not maintain an unjust enrichment claim against the manufacturer if he did not purchase the product directly from the manufacturer. See Jan Schechter v. Hyundai Motor America and Hyundai Motor Company, 2019 WL 3416902, at *11 (D.N.J. July 29, 2019) (dismissing the plaintiffs' unjust enrichment claims based on their allegations that the defendants wrongfully and intentionally concealed the true nature and extent of the a powertrain defect at the time of sale because the plaintiffs did not purchase their vehicles directly from defendants); Greek v. Diet Works, LLC, 2018 WL 1905803, at *4 (D.N.J. 2018) ("[T]he overwhelming majority of New Jersey courts have held that an indirect purchaser cannot state a claim for unjust enrichment."); Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 330 (D.N.J. 2014) (dismissing the

plaintiffs' unjust enrichment claims against Whirlpool arising out of the cost of energy efficient washing machines because they did not purchase their washing machines directly from Whirlpool, but permitting the plaintiff's unjust enrichment claims to proceed against the third-party sellers, like Lowe's and Home Depot) (citing Snyder v. Farnam Companies, Inc., 792 F. Supp. 2d 712, 724 (D.N.J. 2011) ("Plaintiffs have failed to allege that they purchased the Products directly from Defendants, they cannot rightfully expect any remuneration from Defendants, since they never directly conferred a benefit on Defendants."); Cooper v. Samsung Electronics Am., Inc., 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008), aff'd, 374 F. App'x 250 (3d Cir. 2010) (dismissing an unjust enrichment claim where consumer's purchase was through a retailer, as there was no relationship conferring any direct benefit on the manufacturer)); Chernus v. Logitech, Inc., 2018 WL 1981481, at *16 (D.N.J. 2018) (same); Merkin v. Honda North America, Inc., 2017 WL 5309623, at *6 (D.N.J. 2017) (same).

Because Scachetti and Babbitt did not purchase their refrigerators directly from Whirlpool, their claims against Whirlpool for unjust enrichment must be dismissed.[14]

---

[14] DeFillippo purchased his refrigerator from a third-party seller, PC Richard. Whirlpool has not moved to dismiss his unjust enrichment claim on the same basis as Scachetti and Babbitt, and instead appears to rely upon its argument that none

**CONCLUSION**

For the foregoing reasons, the following claims may proceed against Whirlpool:

- Count One – Breach of Express Warranty (DeFillippo and Babbitt)

- Count Two – Breach of Implied Warranty (DeFillippo and Babbitt)

- Count Three – Magnuson-Moss Act (DeFillippo and Babbitt)

- Count Four – Unjust Enrichment (DeFillippo)

- Count Five – Common Law Fraud

- Count Six – New Jersey Consumer Fraud Act

- Count Seven – New Jersey Truth-in-Consumer Contract, Warranty and Notice Act

- Count Eight – New York General Business Law §§ 349 and 350

The following claims are dismissed:

- Count One – Breach of Express Warranty (Scachetti)

- Count Two – Breach of Implied Warranty (Scachetti)

- Count Three – Breach of Magnuson-Moss Act (Scachetti)

---

of the Plaintiffs have properly alleged Whirlpool's improper conduct, which is an element of their unjust enrichment claims. Because the Court has determined that Plaintiffs have properly pleaded Whirlpool's alleged fraudulent activity, the Court will not dismiss DeFillippo's unjust enrichment claim on this basis. The Court also takes no position on the viability of DeFillippo's unjust enrichment claim under New York law, if that law were applicable to that claim. See, *supra*, note 5.

- Count Four – Unjust Enrichment (Scachetti and Babbitt)

An appropriate Order will be entered.


Date: __August 30, 2019__          __s/ Noel L. Hillman__
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.